Thane W. Tienson, OSB #773741
*ttienson@lbblawyers.com*
Richard S. Yugler, OSB #804167
*ryugler@lbblawyers.com*
Landye Bennett Blumstein LLP
1300 SW 5th Avenue, Ste. 3500
Portland, OR  97201
503.224.4100
503.224.4133 (facsimile)

*Of Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **WILLIAM KYLE MONROE,** | Case No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT** *(Civil Rights Violations – Fourth and Fourteenth Amendments ▪ False Arrest ▪ Assault/Battery ▪ Negligence ▪ Outrageous Conduct)* |
| **CITY OF PORTLAND**, by and through the Portland Police Bureau; **DANE REISTER,** fka Daryl Wayne Reister, Jr.; and **MICHAEL REESE,** | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiff alleges:

# INTRODUCTION

1.

This action is brought by the plaintiff to redress the deprivation of his rights, privileges, and immunities secured to him by the Fourth and Fourteenth Amendments to the U.S. Constitution (42 U.S.C. § 1983), and arising under the law and statutes of the State of Oregon.

//////

//////

//////

Page 1 -   COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224-4100
503.224-4133 (facsimile)

*685426.14352-001*

## JURISDICTION

2.

This Court has jurisdiction over the plaintiff's claims under 28 U.S.C §§ 1331, 1332, and 1343. The Court has supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367. The matter in controversy exceeds, exclusive of interest and costs, the sum of $10,000,000.

## VENUE

3.

Venue is proper under 28 U.S.C. § 1391(b), in that one or more of the defendants resides in the District of Oregon, and plaintiff's claim for relief arose in this District.

## PARTIES

4.

At all material times, plaintiff William Kyle Monroe was an adult citizen of the United States. Plaintiff Monroe is presently a citizen and resident of Bremerton, Washington.

5.

At all material times, defendant Dane Reister, fka Daryl Wayne Reister, Jr., was a police officer with the Portland Police Bureau, working as an agent and employee of the City of Portland, acting within the course and scope of his employment as an officer of the Portland Police Bureau, in Multnomah County, Oregon. All incidents described herein occurred while defendant Reister was in uniform and while on duty as a police officer. Upon information and belief, defendant Reister is a resident and citizen of Oregon. Defendant Reister is a "person" subject to suit under 42 U.S.C. § 1983 and is sued in his individual capacity.

6.

At all material times, defendant Michael Reese was Chief of Police of the Portland Police Bureau, and, in that capacity, was responsible for the training policies, procedures, and actions of the Portland Police Bureau and its members, including defendant Reister. Upon information and

Page 2 -   COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224.4100
503.224.4133 (facsimile)

belief, defendant Reese is a citizen and resident of Oregon.  Defendant Reese is a "person" subject to suit under 42 U.S.C. § 1983 and is sued in both his individual and official capacity.

7.

At all material times, defendant City of Portland, Oregon was a municipality and a political subdivision of the State of Oregon, and the Portland Police Bureau was an agency or bureau of the City of Portland.  The defendant City is a "person" subject to suit under 42 U.S.C. § 1983 for unconstitutional actions that are the result of, implementation of, or execution of a policy, practice, pattern, custom, or usage of the local governmental agency.

8.

At all material times, defendants acted under color of law relevant to this Complaint.

9.

Plaintiff Monroe has complied with the 180-day notice provisions of Oregon's Tort Claims Act, ORS 30.275, and has otherwise complied with all conditions precedent to the filing of this lawsuit.

## FACTUAL ALLEGATIONS

10.

On June 30, 2011, plaintiff William Kyle Monroe ("Monroe") was lawfully walking in Lair Hill Park in SW Portland in the mid-morning wearing shorts, a long-sleeved sweatshirt, and a baseball cap.  He had short hair, was clean cut and in good health and not under the influence of any drugs or alcohol.  Monroe, then age 20, had been diagnosed a year earlier as mentally ill because of a bipolar disorder.  Monroe was in the midst of a period of mania, characterized by an elevated and irritable mood, decreased need for sleep, distractibility, flight of ideas, pressured speech, paranoia, and disorganized thinking.  He had been awake since the previous morning.

11.

At that time, plaintiff Monroe lived with his father, stepmother, and brother in Hillsboro, Oregon.  The previous day, he decided to drive to visit his mother in Bremerton, Washington.

Page 3 -   COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224-4100
503.224-4133 (facsimile)

685426.14352-001

After leaving his home in Hillsboro the previous afternoon to travel to Bremerton, Monroe, because of his mental state, became disoriented and parked his car in SW Portland and walked away from it, but then became lost and could not remember where he parked the car and began walking around the area looking for it. He walked all night and ended up in Lair Hill Park the next morning.

12.

At that time, there were young children present at the Park at a day camp event engaged in making leis. Flowers, leaves, and stems had been discarded into the garbage. After initially receiving directions for the location of a water fountain, Monroe went over and pulled some of the discarded flowers, leaves and stems out of the garbage and began tossing them near the children. An adult assisting with the day camp asked him to "let the kids do their thing." That prompted Monroe to walk over to a nearby bench where he continued to throw the discarded lei debris. Monroe apparently then began trying to mimic the day camp assistant's movements which prompted him to ask Monroe "[D]o you need something?" The day camp assistant's mother was also assisting in the day camp and approached Monroe and said, "You can't be starting a fight with my son." Monroe responded, "I have every right to be here." Monroe was then told, "You don't have a right to cause problems. You need to leave." Monroe then walked away. At the direction of his mother, the day camp assistant called 911 to report the incident. In the 911 call, he described Monroe's conduct as "iffy," and said that he had been acting strange and/or weird.

13.

By that time, Monroe had left the immediate area, but was spotted walking nearby. The director of the day camp spoke with Monroe, instructing him to stay away from the park and the children at the camp. Monroe, still in a manic, paranoid state, was initially frightened by the confrontation and grasped a miniature Swiss army pocket knife in his pocket, cupping its open 3" blade in his right hand, which was obscured by the sleeve of his sweatshirt, but did not openly

Page 4 -    COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224-4100
503.224-4133 (facsimile)

685426.14352-001

display it.  The encounter de-escalated.  Monroe calmed down and closed the blade and returned it to his pocket and left the park.  Nonetheless, the pocket knife was observed by the director of the day camp who made a second 911 call, reporting his observations to the operator, including the report that the person may have a pocket knife.  Portland Police Bureau Officer Dean Halley was dispatched to respond to the two 911 calls, which were correctly coded as non-emergency safety calls and not as a report of a crime.

14.

Defendant Reister, who was on-duty and driving in SW Portland to return some recovered stolen merchandise, overheard the dispatch and unilaterally decided to assign himself to also respond to the call.

15.

Defendant Reister arrived first at the scene and spotted Monroe in an area south of Lair Hill Park, approximately .25 miles away from the park.  Defendant Reister confronted Monroe and demanded that he get on his knees with his hands behind his head.  Monroe placed his hands behind his head, but questioned why he should get on his knees.  Defendant Reister then asked Monroe if he had any weapons.  Monroe responded that he had some "tools" in his pocket.  He emptied both of his pockets.  Included among the items discarded by Monroe was the closed miniature Swiss army knife.

16.

When Monroe questioned Reister's demand that he get on his knees, defendant Reister armed himself with his less-lethal shotgun.  Defendant Reister had loaded his less-lethal shotgun with lethal shotgun shells rather than the less-lethal bean bag rounds for which the rifle was designated to fire.  Portland Police Officer Stuart Palmiter, accompanied by his teenage son, and Officer Halley arrived at the scene.  The presence of the armed officers frightened Monroe.  Defendant Reister advanced on Monroe armed with his shotgun.  Monroe assured the officers that he had done nothing wrong and then began walking backwards toward a small wooded

Page 5 -   COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224-4100
503.224-4133 (facsimile)

embankment. He was followed by all of the officers who attempted to surround him. Fearing for his safety, Monroe began running and yelling for help and pleading with defendant Reister not to shoot him. Monroe had not committed any crime, nor was he reasonably suspected of doing so and there was no probable cause to believe a crime had been committed by him.

17.

Without warning plaintiff Monroe or even attempting to use less intrusive means to obtain compliance with his command to stop, defendant Reister opened fire on Monroe with his shotgun, advancing on him as he did so. Defendant Reister fired five times in total, which comprised a complete clip of shells. The fifth round jammed, apparently because of defendant Reister's excessively rapid firing.

18.

The first four rounds all struck Monroe. After the initial round struck him in the left leg, Monroe continued to try to run from defendant Reister to avoid being murdered by him. Because of the severity of his leg injury, he was unable to do so before the second round knocked him to the ground. Defendant Reister continued to advance on Monroe and fired two additional rounds into Monroe's body. The fourth round, which was fired at him from less than 15', left a softball-size hole in Monroe's left leg that went completely through it and exited the other side. The other rounds fired by defendant Reister shattered Monroe's pelvis and punctured his bladder, colon, and rectum. He fell to the ground and began bleeding profusely from his wounds, unable to move. Defendant Reister then forcibly grabbed Monroe's arms, twisted them behind his back, and handcuffed him.

19.

Only after seeing Monroe's inert body turn white from blood loss and seeing the alarming amount of blood pooling next to it, did defendant Reister recognize that he had shot Monroe with live ammunition, rather than with less-lethal bean bag ammunition. An ambulance was summoned. Monroe was taken to a nearby trauma hospital, Oregon Health Sciences University,

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224-4100
503.224-4133 (facsimile)

685426.14352-001

for medical treatment.  Because of the proximity of the hospital and the consequent ability to treat him for his injuries fairly soon after he was shot, Monroe was narrowly able to avoid bleeding to death.

20.

At no time after emptying his pockets did Monroe have anything in his hands.  At no time during Monroe's encounter with police did Monroe commit any crime nor was he ever reasonably suspected of committing any crime or charged with a crime.  At no time did he reasonably constitute a threat or danger to himself, the officers, or to others, and the failure to comply with defendant Reister's command did not provide a license to defendant Reister to begin shooting Monroe with a shotgun, especially when there was no reasonable or legitimate basis for the issuance of the commands in the first place.  The force used against Monroe by defendant Reister was therefore not objectively reasonable.

21.

Defendant Reister carried both lethal and less-lethal impact munitions ("bean bag" munitions) in his duty bag prior to the time of this incident, and claimed that he inadvertently confused the two types of ammunition in loading his less-lethal shotgun.

22.

At the time of this incident, the defendant City of Portland, acting through the Portland Police Bureau, had a policy, practice, or custom of not requiring officers to separate lethal ammunition from less-lethal ammunition and had no policy, practice, or custom in place that prohibited officers from mixing lethal and less-lethal ammunition in their duty bags, and it was customary practice for many officers to do so.  Defendants knew, or reasonably should have known, of the U.S. Department of Justice, Office of Justice Programs, National Institute of Justice's publication of October 2004: *Impact Munitions Use: Types, Targets, Effects (Impact Munitions Use Report)* which identified two deaths that occurred not from impact munitions themselves, but from lethal rounds mistakenly fired by officers who intended to use less-lethal

Page 7 -   COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224.4100
503.224.4133 (facsimile)

*685426.14352-001*

impact munitions, just as defendant Reister claimed he did, and the defendant City knew, or reasonably should have known, of the importance of training in the use and handling of impact munitions to ensure their effectiveness and proper use in the field by avoiding the firing of lethal munitions that were mistaken for less-lethal impact munitions.

23.

The *Impact Munitions Use Repor*t included as a "lesson learned" that impact munitions should be clearly identifiable so that the likelihood of mistakes similar to those cited as causing the two deaths was significantly reduced because of the fact that the lethal shotgun shells looked similar to the less-lethal munitions, just as they did in the instant case, and the importance of having distinctive markings and colorings to allow users to easily distinguish between the two types of munitions.  Following defendant Reister's actions, the Portland Police Bureau adopted a new Executive Order requiring that bean bag ammunition be stored only in a carrier attached to the side or stock of the less-lethal shotgun.

24.

The *Impact Munitions Use Report* also emphasized as another "lesson learned," the importance of understanding that aiming "for the center of mass," as law enforcement personnel are generally trained to do with less-lethal impact munitions, makes those persons struck in the center mass more susceptible to serious injury or death, "especially at close ranges," just as occurred in the instant case.

25.

In October 2006, at a training session for police officers, defendant Reister fired a less-lethal TL-1 launcher to simulate firing that had been mistakenly loaded with a smoke round. When defendant Reister pulled the trigger of his weapon to simulate firing, the smoke round struck a fellow officer in the leg, causing injury.  As a consequence of his failure to determine that his weapon was properly loaded with the correct ammunition for that incident, defendant Reister was formally reprimanded.

Page 8 -   COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224-4100
503.224-4133 (facsimile)

26.

Thus, in at least two separate instances, one of which predated the one permanently injuring plaintiff Monroe, defendant Reister demonstrated a lack of awareness of the condition of his weapon and fired a round that was improperly in his weapon, causing injury to others.

27.

In 2008, defendant Reister was videotaped by a citizen engaging in an unprovoked shoving of another citizen, whereupon defendant Reister unlawfully seized the video camera, falsely claiming that it was unlawful to tape record a police officer in the performance of his official duties and cited him for doing so. The citation was thereafter dismissed and the video camera returned to its owner.

28.

On or about November 18, 2011, a Multnomah County grand jury voted to indict defendant Reister on felony third-degree assault and misdemeanor fourth-degree assault charges. The elements of the crime of third-degree assault are that one "recklessly" caused serious physical injury by means of a dangerous weapon or "with extreme indifference" to the value of human life, and that is precisely what defendant Reister did in shooting plaintiff Monroe. The charges remain pending against defendant Reister. Based upon information and belief, no disciplinary action of any sort has been instituted against defendant Reister by defendant Reese or by the defendant City, and by their inaction, said defendants have condoned, ratified, or otherwise turned a blind eye to defendant Reister's extreme misconduct and demonstrated a deliberate indifference to the plaintiff's constitutionally-protected rights.

29.

Monroe's injuries were quite serious and have caused him to be permanently disabled. Some of Monroe's gunshot wounds resulted in the fracturing of his pelvis and a puncture wound of his bladder, abdomen, and colon. As a consequence of defendant Reister's shooting of him, plaintiff Monroe experienced acute blood loss and anemia, nearly resulting in his death. He also

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224-4100
503.224-4133 (facsimile)

*685426.14352-001*

sustained injuries to his right and left legs from entrance and exit wounds that resulted in the severing of the sciatic nerve in his left leg, resulting in the permanent inability to make use of the leg or to have any feeling or sensation in it.  As a consequence of that injury, Monroe has been permanently disabled and will never be able to walk normally, run, or play or engage in any of the sports that he formerly enjoyed on a regular basis throughout the remainder of his life.

30.

Monroe lost consciousness from his wounds and blood loss and required three transfused units of blood and a unit of platelets.  In addition to the severing of his sciatic nerve, Monroe suffered extensive other injuries.  At the time of his initial hospitalization, he underwent an exploratory laparotomy on June 30, 2011, repair of three colon injuries, the packing of the pelvis for hemorrhage, irrigation and debridement of multiple lower extremity wounds, and placement in a temporary abdominal wound vac.  A flexible sigmoidoscopy was administered, and there was closure of a coistotomy for a bladder injury.  A repeat exploratory laparotomy was performed on July 1, 2011, with abdominal washout and irrigation and debridement of bilateral thigh wounds, primary closure of the right thigh wound, wound vac placement for left thigh wounds, and irrigation debridement of the right buttock wound.  A fourth surgery was undergone on July 4, 2011 which consisted of a wound vac removal, washout of his lower extremity wounds, delayed closure of a midline abdominal wound, placement of penrose drains, partial wound closure of the left lower extremity, and dressing change of the right buttock wound.

31.

As a result of his injuries, Monroe also experienced a hyperemic right testes and a right epididymis compatible with epididymoorchitis.  Subsequently, Monroe was also diagnosed with having a deep vein thrombosis in the left lower extremity involving the peritoneal vein, and superficial venous thrombosis involving the great saphenous vein.

//////

//////

Page 10 -  COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224-4100
503.224-4133 (facsimile)

685426.14352-001

32.

Subsequent to his initial five-week hospitalization at OHSU, Monroe underwent extensive treatment for his injuries, including physical therapy. On June 9, 2012, Monroe was treated at the in-patient psychiatric unit at OHSU where he began having vomiting and abdominal pain which was subsequently diagnosed as a small bowel obstruction caused by his initial gunshot wounds. An exploratory laparotomy was performed and a surgical revision of his abdominal scarring was performed.

33.

The recovery process from his injuries was, and has been, lengthy, and included complications from necrotic tissue, venous thrombosis, testicular infection and swelling, and a small bowel obstruction. He is unable to flex his left foot and great toe due to permanent injury to his perotoneal nerve, an injury commonly described as "drop foot." He has extensive and permanent scarring on his buttocks, abdomen, legs, and multiple shotgun pellets will remain permanently embedded in his body because of the inability to safely or effectively remove them surgically. Monroe continues to suffer pain on a daily basis, and will do so for the rest of his life. He has an additional estimated life expectancy of 62 years.

34.

In addition to his physical injuries, Monroe suffered severe emotional injury and acute stress reaction, an exacerbation of his underlying bipolar disorder, and post-traumatic stress disorder and depression, for all of which he has received, and will continue to require, appropriate treatment and medication in the future.

35.

As a direct and proximate result thereof, plaintiff Monroe sustained severe, permanent, and disabling injuries which have caused him severe physical, mental, and emotional distress, all to his noneconomic damage in an amount to be determined by the jury, but not to exceed the amount of $10,000,000.

Page 11 - COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224-4100
503.224-4133 (facsimile)

685426.14352-001

36.

As a further direct and proximate result thereof, plaintiff Monroe has incurred medical and other economic expenses, all to his economic damage in an amount to be determined by the jury.  Said expenses total the approximate amount of $150,000 incurred to date.  These expenses are continuing, and are expected to total in excess of $1,000,000 over the course of plaintiff Monroe's lifetime.

# FIRST CLAIM FOR RELIEF

## 42 U.S.C. § 1983 – Violations of Fourth and Fourteenth Amendments

## Unlawful and Unreasonable Seizure – Excessive Force

### *Defendant Reister*

37.

Plaintiff realleges and incorporates herein the allegations contained in ¶¶ 1-36 above.

38.

By Executive Order dated March 17, 2008, the defendant City of Portland, acting through the Portland Police Bureau, adopted a revised policy directive pertaining to the use of physical force by members of the Portland Police Bureau.  At the time of plaintiff Monroe's shooting, this policy of the defendant City and the Portland Police Bureau remained in effect.  A copy of the policy is attached hereto and incorporated by reference as Exhibit "A".

39.

At the time plaintiff Monroe was shot and seriously and permanently injured by defendant Reister, it was the policy of the defendant City, acting through the Portland Police Bureau, "to accomplish its mission as effectively as possible, but with as little reliance on force as practical."  Police officers were required to "… use only the force reasonably necessary under the totality of the circumstances to perform their duties and resolve confrontations effectively and safely."

//////

Page 12 -  COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224-4100
503.224-4133 (facsimile)

40.

Under the policy set forth in Exhibit "A", force may be accomplished only in certain official purposes, including the prevention or termination of the commission or attempted commission of an offense, the prevention of a suicide or serious self-inflicted injury, the lawful arrest or taking into custody of a person, to defend against the use of physical force, or to accomplish some other official purpose or duty that was authorized by lawful judicial decree. Defendant Reister failed to comply with this policy because none of the official purposes under which the use of physical force was authorized was present.

41.

In addition, according to the policy, in determining whether the force used was reasonably necessary to perform the officer's duties and to resolve confrontations effectively and safely, neither the totality of the circumstances at the scene at which plaintiff Monroe was shot by defendant Reister or the application of the levels of control continuum model used by the defendant City and Portland Police Bureau in determining the force reasonably necessary to perform an officer's duties or resolve confrontation justified the level of force used by defendant Reister. Indeed, no level of force was justified under the terms of the policy of the defendant City and Portland Police Bureau in dealing with plaintiff Monroe at the time he was shot and seriously and permanently injured by defendant Reister.

42.

Plaintiff Monroe's level of resistance to defendant Reister's commands to him was quite low. He initially complied with every command except the command to get on his knees, even though there was no reasonable or legitimate basis for the issuance of such a command. He offered no physical resistance other than to move away from defendant Reister to try to avoid being shot. Defendant Reister failed to utilize an objectively reasonable assessment of the facts before opening fire on plaintiff Monroe and made no effort to consider whether the use of a lesser degree of force or, indeed any force, was objectively reasonable under the circumstances.

Page 13 - COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224-4100
503.224-4133 (facsimile)

Contrary to the linear force continuum model used by the defendant City, defendant Reister opted to fire a loaded shotgun at the plaintiff without warning, not just once, but five times in succession and only narrowly avoided killing him.

43.

In the Final Technical Report draft: Assessing Police Use of Force and Policy Outcomes funded by the National Institute of Justice and prepared by authors William Terrill, Eugene Paoline, and Jason Ingram published in May 2011, shortly before this incident occurred, the Portland Police Bureau's use of force continuum policies were examined and compared with those in place in other cities throughout the United States. Compared to other municipal police forces studied, Portland Police Bureau officers were found to have used the highest amount of force relative to citizen's resistance. Defendant Reister's shooting of plaintiff Monroe is yet another example of an officer of the Portland Police Bureau utilizing the highest amount of force when no force was justified and upon a citizen who offered little resistance.

44.

Defendant Reister failed to comply with the defendant City's physical force policy and he used extreme, unnecessary, objectively unreasonable, excessive, and potentially deadly, force against the plaintiff, all in violation of the plaintiff's constitutional right to be free from unreasonable seizures and the use of excessive force upon his person under the Fourth and Fourteenth Amendments to the U.S. Constitution.

45.

As a direct and proximate result of the use of that extreme, unnecessary, objectively unreasonable, excessive, and deadly force, Monroe suffered severe, permanent, and disabling physical and emotional injuries as set forth herein, all to his economic and noneconomic damages in amounts to be proven at trial.

//////

//////

Page 14 -  COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224-4100
503.224-4133 (facsimile)

685426.14352-001

46.

Further, defendant Reister's conduct that harmed the plaintiff was malicious, oppressive, or in reckless disregard of the plaintiff's rights, and plaintiff is therefore also entitled to an award of punitive damages in an amount to be proven at trial.

47.

Plaintiff Monroe is further entitled to an award of attorney fees, expert fees, and costs and expenses pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF

### 42 U.S.C. § 1983 - Violations of Fourth and Fourteenth Amendments

### Excessive Force

### *Defendants Reese and City of Portland*

48.

Plaintiff realleges and incorporates herein the allegations contained in ¶¶ 1-47 above.

49.

The defendant City, acting through the Portland Police Bureau, was a defendant in a lawsuit brought in 2007 on behalf of James P. Chasse, Jr., a mentally ill person who died in police custody on September 17, 2006. The defendant City resolved that lawsuit by entering into a comprehensive settlement agreement in May 2010 that required that all officers of the Portland Police Bureau, including defendant Reister, undergo training to assist them in identifying, understanding, and dealing with persons who are, or may be, mentally ill, a population of people that forms a substantial percentage of persons encountered by the officers of the Portland Police Bureau in the performance of their duties. Defendant Reese, as Chief of Police, was and is responsible for training, supervising, and disciplining all members of the Portland Police Bureau, including defendant Reister.

//////

//////

Page 15 -  COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224-4100
503.224-4133 (facsimile)

685426.14352-001

50.

That training was completely ineffective and inadequate, so much so that defendant City of Portland was found to have engaged in a pattern of the use of excessive force against people with mental illness by the U.S. Department of Justice and criticized for its ineffective training in dealing with the mentally ill in an investigation concluded in September 2012, and, at the time of the incident which is the subject of this lawsuit, the defendant City continued to engage in a well-established pattern, practice, policy, and/or custom of using unnecessary, unreasonable, excessive, and even deadly force against citizens who are or are perceived to be mentally ill, including plaintiff Monroe.

51.

Defendants knew, or reasonably should have known, that plaintiff was a person experiencing a mental illness and/or emotional crisis, or may have been such a person. The Portland Police Bureau's policies at the time required its officers to at least "recognize and reasonably balance society's significant interests in providing care for that person" when considering a use of force option.

52.

The actions and omission of the defendant City of Portland, acting by and through the Portland Police Bureau and defendant Reese, were a substantial factor and moving force in causing excessive force to be used against the plaintiff, resulting in the severe injuries that he sustained.

53.

More specifically, as set forth above, the defendant City engaged in a well-established pattern, practice, policy, or custom of using excessive and/or deadly force against citizens perceived to be mentally ill and emotionally disturbed, and its training of Portland police officers in dealing with the mentally ill and emotionally disturbed, including the training of defendant //////

Page 16 - COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224-4100
503.224-4133 (facsimile)

685426.14352-001

Reister, following the *Chasse v. City of Portland* settlement agreement, was manifestly deficient and ineffective.

54.

Defendant City of Portland, acting by and through the Portland Police Bureau, and defendant Reese, as a pattern, practice, policy, and/or custom, failed to maintain or conduct adequate and proper training, supervision, evaluation, and/or discipline for defendant Reister and other police officers in the Portland Police Bureau necessary to educate the officers as to the constitutional rights of citizens to prevent the consistent and systematic use of excessive force by those officers, especially against those perceived to be emotionally disturbed and mentally ill.

55.

In addition, defendants City of Portland and Reese, as a matter of pattern, practice, policy, usage, and/or custom, failed to adequately properly screen, hire, evaluate, and discipline Portland Police officers to determine those who were psychologically unfit for service as a police officer and to screen out those who were pre-disposed to use excessive force and/or to improperly arm, load, and discharge their weapons, such as defendant Reister.

56.

In addition, as a matter of pattern, practice, policy, usage, and/or custom, the Portland Police Bureau allowed officers, including defendant Reister, to commingle less-lethal impact munitions and lethal munitions in their duty bag, thereby significantly increasing the risk that the lethal shotgun shells would be mistaken for less-lethal impact munitions and loaded into and fired from a shotgun rifle designed to accommodate both less-lethal impact munitions and lethal munitions.

57.

Because of these patterns, practices, policies, and/or customs, the defendant City of Portland was deliberately indifferent to the substantial risk of harm that could result to citizens, including the plaintiff, when interacting with Portland Police Bureau officers, particularly those,

Page 17 - COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224.4100
503.224.4133 (facsimile)

685426.14352-001

including plaintiff Monroe, who should have been perceived to be mentally ill and emotionally disturbed.

58.

The failure of the defendants City of Portland and Reese to properly screen, hire, evaluate, and discipline police officers; their failure to provide adequate training, supervision, and/or discipline to police officers in dealing with mentally ill and emotionally disturbed persons; their failure to adequately investigate, supervise, and discipline officers who exercised excessive force and/or improperly armed, loaded, or fired weapons, including defendant Reister, the failure to segregate lethal munitions from impact munitions in duty bags, were all patterns, practices, policies, and/or customs of the defendants that caused, were a moving force, and/or substantially contributed to the use of objectively unreasonable and excessive force against plaintiff Monroe, causing him to sustain severe, permanent, and disabling physical and emotional injuries as set forth above.

59.

Said defendants, in the exercises of their functions, were deliberately indifferent to the constitutional rights of plaintiff, and they acted with a conscious disregard for the dangers of harm or injury to the plaintiff which resulted in a deprivation of plaintiff's federal constitutional right under the Fourth and Fourteenth Amendments to be free from unreasonable seizures and the use of excessive force upon his person, all to plaintiff's noneconomic and economic damages in amounts to be proven at trial.

### THIRD CLAIM FOR RELIEF

**42 U.S.C. § 1983**

**Permanent Injunctive Relief**

***Defendants Reese and City of Portland***

60.

Plaintiff realleges and incorporates herein the allegations contained in ¶¶ 1-59 above.

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224-4100
503.224-4133 (facsimile)

*685426.14352-001*

61.

The defendant City of Portland and defendant Reese, their agents, successors, employees, subordinates, representatives, and any and all persons acting in concert with said defendants, should be permanently enjoined to:

(1)   Adopt and implement the recommendations contained within the "Report to the City of Portland on Portland Police Bureau Officer-Involved Shootings" issued in 2012, to the extent the recommendations apply to the events that are the subject of this action.

(2)   If not already adopted through mediation or court order, for an injunction requiring the defendant City to accept all of the recommendations and adopt and implement the Agreement entered into between the defendant City and the U.S. Department of Justice for the reform and monitoring of the Portland Police Bureau in conjunction with the civil suit filed by the U.S. Department of Justice against the defendant City under the Violent Crime Control Law Enforcement Act of 1994, charging that the Portland Police Bureau "engages in a pattern or practice of using excessive force on individuals with actual or perceived mental illness in violation of the Fourth Amendment of the Constitution and other laws of the United States.   *United States of America, Plaintiff v. City of Portland and Portland Police Bureau, Defendants*, Case No. 3:12-CV-02265-SI;

(3)   Require the defendant City and the Portland Police Bureau to adopt changes to the Portland Police Bureau's policy in training for use of force to require an emphasis on de-escalation to take into account whether the subject may have a mental illness or is experiencing a mental health crisis;

(4)   Require the defendant City and the Portland Police Bureau to mandate officers' use of the lowest level of force necessary to achieve lawful means to facilitate services for those in need of mental health treatment or support;

Page 19 - COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224-4100
503.224-4133 (facsimile)

685426.14352-001

(5)    Require the defendant City and the Portland Police Bureau to appoint an independent monitor with the authority to enforce the terms of the Agreement entered into between the defendant City and the U.S. Department of Justice to monitor implementation of the required changes to ensure that they occur on a timely basis and to ensure that meaningful reforms to approve public safety and community trust are enacted;

(6)    Require the defendant City of Portland and the Portland Police Bureau, as a matter of pattern, practice, policy, usage, and/or custom, to adequately properly screen, hire, evaluate, and discipline Portland Police officers to determine those who were psychologically unfit for service as a police officer and to screen out those who were pre-disposed to use excessive force and/or to improperly arm, load, and discharge their weapons;

(7)    Require the defendant City of Portland and the Portland Police Bureau to properly screen, hire, evaluate, and discipline police officers; to provide adequate training, supervision, and/or discipline to police officers in dealing with mentally ill and emotionally disturbed persons; to adequately investigate, supervise, and discipline officers who exercised excessive force and/or improperly armed, loaded, or fired weapons, and to segregate lethal munitions from impact munitions in duty bags;

(8)    Terminate the employment of defendant Reister from the City of Portland from the Portland Police Bureau forthwith.

## FOURTH CLAIM FOR RELIEF

### Battery

### *Defendants Reister and City of Portland*

62.

Plaintiff realleges and incorporates herein the allegations contained in ¶¶ 1-47 above.

//////

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224-4100
503.224-4133 (facsimile)

685426.14352-001

63.

Defendant Reister acted with intent to cause harmful or offensive contact with the plaintiff, and the attendant harmful or offensive contact did, in fact, occur. The harmful or offensive contact was not privileged or consented to. It was excessive, unreasonable, and done with deliberate indifference to the rights, health, and safety of the plaintiff, and was done with the intent to inflict punishment upon him and constituted a battery upon his person.

64.

As a result of the defendant Reister's battery upon the plaintiff, the plaintiff sustained severe, painful, permanent, and disabling physical and emotional injuries, all to his economic and noneconomic damages in amounts to be proven at trial.

65.

Defendant City of Portland is liable for the tortious actions of defendant Reister pursuant to the doctrine of *respondeat superior*.

66.

In addition, plaintiff is entitled to an award of punitive damages because defendant Reister acted with malice or showed a reckless and outrageous indifference to a highly unreasonable risk of harm, and acted with a conscious indifference to the health, safety, and welfare of plaintiff in his actions.

# FIFTH CLAIM FOR RELIEF

## Outrageous Conduct

### *Defendants Reister and City of Portland*

67.

Plaintiff realleges and incorporates herein the allegations contained in ¶¶ 1-47, 64, and 65 above.

//////

//////

Page 21 - COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224-4100
503.224-4133 (facsimile)

*685426.14352-001*

68.

Defendant Reister's conduct was so extreme that it goes beyond all possible bounds of decency, and it constituted conduct that a reasonable person would regard as intolerable in a civilized community.  He abused his position of authority and that authority gave him real or apparent power over the plaintiff.  Defendant Reister either knew that emotional distress would probably result from his misconduct, or gave little or no thought to the probable effects of his misconduct and caused severe emotional distress to plaintiff, as well as severe, painful, permanent, and disabling physical injuries, all to plaintiff's economic, noneconomic, and punitive damages in amounts to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### False Arrest

### *Defendants Reister and City of Portland*

69.

Plaintiff realleges and incorporates herein the allegations contained in ¶¶ 1-47, 64, and 65 above.

70.

There are no potentially reasonable facts which would have caused the plaintiff to have been lawfully arrested or restrained.  Plaintiff committed no crime and there was no probable cause or even a reasonable suspicion to believe that he had committed a crime.

71.

Defendant Reister's actions therefore constitute a false arrest of the plaintiff.

72.

As a direct and proximate result of the false arrest of the plaintiff by defendant Reister, plaintiff is entitled to an award of economic, noneconomic, and punitive damages in amounts to be proven at trial.

//////

Page 22 - COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
Attorneys at Law
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224-4100
503.224-4133 (facsimile)

685426.14352-001

## SEVENTH CLAIM FOR RELIEF

### Negligence

### *Defendants Reister and City of Portland*

73.

Plaintiff realleges and incorporates herein the allegations contained in ¶¶ 1-47, and 65 above.

74.

Defendants had a duty to plaintiff to act with ordinary care and prudence so as not to cause plaintiff Monroe harm or injury.

75.

The defendant City breached its duty of care to the plaintiff by maintaining patterns, practices, policies, and/or customs that encourage the use of excessive force by officers of the Portland Police Bureau, including defendant Reister, especially when interacting with those individuals who are mentally ill or perceived to be mentally ill and emotionally disturbed which resulted in severe, permanent, and disabling physical and emotional injuries to plaintiff as set forth herein.

76.

In addition, the defendant City owed a duty to the plaintiff and others similarly situated to exercise reasonable care in connection with the hiring, training, evaluation, supervision, and retention of persons acting as police officers and empowered to use force on suspects and other individuals with whom they would come in contact in the community.

77.

The defendant City breached its duty of care to the plaintiff by failing to exercise reasonable care in the conduct of these actions in its hiring, training, evaluation, supervision, and retention of defendant Reister.

//////

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon 97201
503.224-4100
503.224-4133 (facsimile)

*685426.14352-001*

78.

Further, the defendant City breached its duty of care to the plaintiff by maintaining patterns, practices, policies, and/or customs that allowed officers to commingle lethal munitions and less-lethal impact munitions in their duty bags, thereby significantly increasing the risk that a lethal shotgun shell would be loaded and fired in defendant Reister's shotgun which had been designed so as to accommodate both lethal and less-lethal impact munitions.

79.

Defendant Reister was negligent in several respects that caused injury to the plaintiff, including, but not limited to, his decision to commingle lethal and less-lethal impact munitions in his duty bag, his decision to issue a command to the plaintiff to get on his knees when there was no lawful or reasonable basis to do so, his decision to use a shotgun to secure compliance with his commands, his decision to fire the shotgun at the plaintiff, his decision to fire the shotgun at the plaintiff at close range, and his failure to earlier appreciate that he was firing lethal shotgun shells.

80.

As a direct and proximate result of the negligence of the defendants, plaintiff sustained severe, painful, permanent, and disabling physical and emotional injuries as set forth above, all to his economic and noneconomic damage in amounts to be proven at trial.

**WHEREFORE**, plaintiff prays for judgment against defendants as follows:

(1)     On his First, Second, and Fourth through Seventh Claims for Relief, for economic damages in an amount to be determined by a jury; said damages total the approximate amount of $150,000 incurred to date, and these expenses are continuing and are expected to total in excess of $1,000,000 over the course of plaintiff Monroe's lifetime;

//////

//////

Page 24 -  COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224-4100
503.224-4133 (facsimile)

685426.14352-001

(2)     On his First, Second, and Fourth through Seventh Claims for Relief, for noneconomic damages in an amount to be determined by a jury, not to exceed the amount of $10,000,000;

(3)     On his First, Fourth, Fifth, and Sixth Claims for Relief, for punitive damages in an amount to be proven at trial;

(4)     On his First, Second, and Third Claims for Relief, for his reasonable attorney fees and expert fees pursuant to 42 U.S.C. § 1988;

(5)     On his Third Claim for Relief, for permanent injunction defendants City and Reese, their agents, successors, employees, subordinates, representatives, and all persons acting in concert with said defendants, requiring them to:

    a.     Adopt and implement the recommendations contained within the "Report to the City of Portland on Portland Police Bureau Officer-Involved Shootings" issued in 2012, to the extent the recommendations apply to the events that are the subject of this action.

    b.     If not already adopted through mediation or court order, for an injunction requiring the defendant City to accept all of the recommendations and adopt and implement the Agreement entered into between the defendant City and the U.S. Department of Justice for the reform and monitoring of the Portland Police Bureau in conjunction with the civil suit filed by the U.S. Department of Justice against the defendant City under the Violent Crime Control Law Enforcement Act of 1994, charging that the Portland Police Bureau "engages in a pattern or practice of using excessive force on individuals with actual or perceived mental illness in violation of the Fourth Amendment of the Constitution and other laws of the United States. *United States of America, Plaintiff v. City of Portland and Portland Police Bureau, Defendants*, Case No. 3:12-CV-02265-SI;

Page 25 -  COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224-4100
503.224-4133 (facsimile)

*685426.14352-001*

c.     Require the defendant City and the Portland Police Bureau to adopt changes to the Portland Police Bureau's policy in training for use of force to require an emphasis on de-escalation to take into account whether the subject may have a mental illness or is experiencing a mental health crisis;

d.     Require the defendant City and the Portland Police Bureau to mandate officers' use of the lowest level of force necessary to achieve lawful means to facilitate services for those in need of mental health treatment or support;

e.     Require the defendant City and the Portland Police Bureau to appoint an independent monitor with the authority to enforce the terms of the Agreement entered into between the defendant City and the U.S. Department of Justice to monitor implementation of the required changes to ensure that they occur on a timely basis and to ensure that meaningful reforms to approve public safety and community trust are enacted;

f.     Require the defendant City of Portland and the Portland Police Bureau, as a matter of pattern, practice, policy, usage, and/or custom, to adequately properly screen, hire, evaluate, and discipline Portland Police officers to determine those who were psychologically unfit for service as a police officer and to screen out those who were pre-disposed to use excessive force and/or to improperly arm, load, and discharge their weapons;

g.     Require the defendant City of Portland and the Portland Police Bureau to properly screen, hire, evaluate, and discipline police officers; to provide adequate training, supervision, and/or discipline to police officers in dealing with mentally ill and emotionally disturbed persons; to adequately investigate, supervise, and discipline officers who exercised excessive

Page 26 -  COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224-4100
503.224-4133 (facsimile)

685426.14352-001

          force and/or improperly armed, loaded, or fired weapons, and to segregate lethal munitions from impact munitions in duty bags;

h.     Terminate the employment of defendant Reister from the City of Portland and the Portland Police Bureau forthwith;

(6)    For his costs and disbursements incurred herein; and

(7)    For such other and further relief as the Court deems just and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

DATED this 11th day of April, 2013.

LANDYE BENNETT BLUMSTEIN LLP


By:/s/  Thane W. Tienson
     Thane W. Tienson, P.C., OSB #773741
     Richard S. Yugler, P.C., OSB #804167
     *Of Attorneys for Plaintiff*

Page 27 -  COMPLAINT

LANDYE BENNETT BLUMSTEIN LLP
*Attorneys at Law*
1300 SW Fifth Avenue, Suite 3500
Portland, Oregon  97201
503.224-4100
503.224-4133 (facsimile)

*685426.14352-001*

 

## CITY OF PORTLAND, OREGON

**Bureau of Police**
Tom Potter, Mayor
Rosanne M. Sizer, Chief of Police
1111 S.W. 2nd Avenue • Portland, OR 97204 • Phone: 503-823-0000 • Fax: 503-823-0342

Integrity • Compassion • Accountability • Respect • Excellence • Service

EXECUTIVE ORDER

DATE:        March 17, 2008

TO:          All Members

RE:          REVISED DIR 1010.20 Physical Force

ACTION:      Please destroy all copies of the Executive Order dated March 11, 2008 DIR 1010.20
Physical Force. The revised directive is included in this Executive Order. All members should
review the entire contents of the directive including the Policy (1010.20) section. All members
should review content.

**1010.20 Physical Force**
Revision # 5
Index:      Title:
Refer:    ORS 161.015 (7)  Physical Injury, defined
          ORS 161.205 – 161.265  Use of Physical Force
          DIR 630.45 Emergency Medical Custody Transports
          DIR 630.50 Emergency Medical Aid
          DIR 910.00 Field Reporting Handbook Instructions
          DIR 940.00 After Action Reports

**POLICY (1010.20)**
   The Portland Police Bureau recognizes that duty may require members to use force. The Bureau
requires that members be capable of using effective force when appropriate. It is the policy of the
Bureau to accomplish its mission as effectively as possible with as little reliance on force as practical.
   The Bureau places a high value on resolving confrontations, when practical, with less force than
the maximum that may be allowed by law. The Bureau also places a high value on the use of de-
escalation tools that minimize the need to use force.
   The Bureau is dedicated to providing the training, resources and management that help members
safely and effectively resolve confrontations through the application of de-escalation tools and lower
levels of force.
   It is the policy of the Bureau that members use only the force reasonably necessary under the
totality of circumstances to perform their duties and resolve confrontations effectively and
safely. The Bureau expects members to develop and display, over the course of their practice of law
enforcement, the skills and abilities that allow them to regularly resolve confrontations without
resorting to the higher levels of allowable force.
   Such force may be used to accomplish the following official purposes:

EXHIBIT "A"
Page 1 of 5

a. Prevent or terminate the commission or attempted commission of an offense.
b. Lawfully take a person into custody, make an arrest, or prevent an escape.
c. Prevent a suicide or serious self-inflicted injury.
d. Defend the member or other person from the use of physical force.
e. Accomplish some official purpose or duty that is authorized by law or judicial decree.

When determining if a member has used only the force reasonably necessary to perform their duties and resolve confrontations effectively and safely, the Bureau will consider the totality of circumstances faced by the member, including the following:

a. The severity of the crime.
b. The impact of the person's behavior on the public.
c. The extent to which the person posed an immediate threat to the safety of officers, self or others.
d. The extent to which the person actively resisted efforts at control.
e. Whether the person attempted to avoid control by flight.
f. The time, tactics and resources available.
g. Any circumstance that affects the balance of interests between the government and the person.

The Bureau's levels of control model describes a range of effective tactical options and identifies an upper limit on the force that may potentially be used given a particular level of threat. However, authority to use force under this policy is determined by the totality of circumstances at a scene rather than any mechanical model.

## PROCEDURE (1010.20)
### Directive Specific Definitions
Force: Physical contact that is readily capable of causing physical injury, as well as the pointing of a firearm.
Physical injury: As defined in ORS 161.015 (7), the impairment of physical condition or substantial pain.

### Precipitation of Use of Force Prohibited (1010.20)
Members should recognize that their approach to confrontations may influence whether force becomes necessary and the extent to which force must be used.
Members must not precipitate a use of force by placing themselves or others in jeopardy through actions that are inconsistent with the Police Bureau's defensive tactics and tactical training without a substantial justification for variation from recommended practice.

### Vehicles (1010.20)
Due to the risks involved, members should not enter an occupied vehicle capable of being driven (i.e., engine running or keys in the ignition) except to address an immediate threat of death or serious physical injury to any person.

### Post Use of Force Medical Attention (1010.20)
When a member is involved in the use of force in which physical injury has occurred or there is reason to believe there may be a physical injury, the member, if able, shall:
a. Continually monitor the subject if tactically appropriate or feasible. The member shall monitor the person for changes in skin or lip color, breathing and levels of consciousness. If any significant changes in any of these areas are observed, the member shall notify EMS immediately. See DIR 630.50 Emergency Medical Aid for further requirements.

EXHIBIT "A"
Page 2 of 5

    b. Request EMS evaluate and treat those persons involved and injured prior to removal from the scene.

    c. When pepper spray has been applied to a person, make every attempt to provide relief from the pepper spray exposure and move the person into an area of open air.

    d. Contact the immediate supervisor and brief the supervisor on the incident.

    e. Have the person transported to a medical facility for additional treatment if recommended by EMS. See DIR 630.45 Emergency Medical Custody Transports for important additional direction on transporting injured subjects.

    f. When transporting a person from hospital treatment to a correctional facility, notify a corrections staff member of the extent of the person's injuries and medical treatment given and provide the corrections staff with the person's medical release forms from the medical facility.

If a person has been placed in maximum restraints or on the ground for control, members must do the following as soon as practical:

    a. Release pressure/weight from the person's back or upper body.

    b. Check and continue to monitor the person's breathing and pulse until EMS arrives.

    c. Place the person in a seated position or position the person on their side to reduce the possibility of breathing problems by reducing the restriction to the person's diaphragm.

    d. Provide EMS with an update on the person's condition if it appears to worsen.

For important additional guidance on transporting injured persons, see DIR 630.45 Emergency Medical Custody Transports.

**Duty to Report and Notification and Reporting (1010.20)**

Members have a duty to report any use of force that violates this Directive.

Members shall make a report when they use force to their supervisor or designee. Reports must be complete and accurate and describe the subject's behavior and the justification for the force used including a description of the totality of circumstances that existed.

A member who causes physical injury or who takes a person to the ground by applying force will complete a Force Data Collection Report (FDCR) in addition to any other reports required by Bureau policy. A member who applies a control hold that does not cause physical injury is not required to complete a FDCR for the control hold application. A member who applies a hold to gain control of a person, who follows commands and goes to the ground voluntarily without the application of additional force, is not required to complete a FDCR.

If the primary report and FDCR covering the specific incident are completed by one member, and another member used physical force in the incident, then each member who used physical force will complete a FDCR. The only exception to this is when the use of force was pointing a weapon at one or more persons (i.e., during a high risk stop). In that case only one FDCR need be completed.

The following circumstances do not require a FDCR:

    a. Bureau approved training exercises (i.e., an in-service patrol tactics class).

    b. A member unknowingly points a weapon at a person during a building search or other high risk situation (i.e., an undiscovered person was hiding behind an object at which a member pointed a weapon).

If a member's use of force results in a person being admitted to an overnight hospital stay for treatment, a supervisor will complete an after action report. The supervisor will forward the after action report, through their chain of command, to the appropriate Branch chief. The member's RU manager will forward a copy of the after action to the Internal Affairs Division and the Training Division.

If the member is injured and unable to submit a report, the report regarding the use of force will be completed by an on-duty supervisor. Supervisors will be notified as soon as possible of the use of physical force which requires any person to receive medical attention.

Supervisors will ensure that members comply with the reporting requirements. Members shall follow DIR 940.00 After Action Reports as it pertains to specific reporting requirements.

**Canine (K-9) Bites (1010.20)**

Canine handlers shall complete a FDCR for all bites that follow a member's intentional application of a police canine for the purpose of biting. The canine's handler will articulate the justification for the application of the canine and will state whether the bite was directed or not directed by the handler.

All police canine bites will be administratively reported by a supervisor, through channels, to the appropriate Branch chief in an after action report using the Bureau's standard format.

**Handcuffing (1010.20)**

Although handcuffing is not defined as physical force in this directive, Bureau policy requires that members document each handcuffing in a police report (i.e., Investigation, Custody or Special).

**Supervisor Responsibilities (1010.20)**

a. Supervisory Review of Reports
   Supervisors shall review all reports of force to determine if the reports are complete and accurate and whether the force was justified under this policy. Supervisors shall address deficiencies in reports promptly.

b. Discipline Case Review Process
   Supervisors are required to address all requirements of force policies when preparing proposed findings in misconduct investigations and must include all available information on the totality of circumstances.

**Semi-annual Review of Use of Force (1010.20)**

The Police Bureau will provide the training, resources and management necessary to help members comply with this directive.

Each operational unit will identify a unit-based group to review the unit's force practices and assist supervisors in conducting semi-annual reviews of each member's performance in confrontations. The reviews are a training function, and not a part of the discipline process. The goals of the review effort are to:

a. Ensure consistency and fairness.
b. Provide feedback to officers on force and confrontation decision making.
c. Identify training needs based on trends.
d. Create a positive learning environment.

FOR MORE INFORMATION:
Please contact Marsha Palmer, Strategic Services Division, at 503-823-0264.

EXHIBIT "A"
Page 4 of 5

ROSANNE M. SIZER
Chief of Police

RMS/mp